Judgment must be affirmed, with costs. All concur.

---

### WEILL et al. v. MALONE et al.

(Supreme Court, General Term, Second Department. December 2, 1895.)

CANCELLATION OF CONTRACTS—RETURN OF BENEFITS.

> An agreement will not be canceled on the ground of fraud, unless the party so seeking returns or tenders the benefits derived by him thereunder.

Appeal from special term, Kings county.

Action by Elie Weill and Elie Lazard against Joseph Malone and others to cancel a certain agreement, for an injunction, and for an accounting. From a judgment entered on an order dismissing the complaint, and from an order denying a motion to open the judgment, plaintiffs appeal. Affirmed.

The opinion of Mr. Justice GAYNOR at special term is as follows:

The plaintiffs were commission merchants, while the defendants Joseph Malone & Co. were manufacturers of corset steels and like corset materials. These parties entered into a written agreement by which the plaintiffs became the selling agents of the entire product of the factory of the said Joseph Malone & Co. They were to guaranty all sales, and have a commission of five per cent.; and Joseph Malone & Co. were to fill orders for such manufactured goods as should be given to them by the plaintiffs. The contract also contemplated that the plaintiffs should make money advancements and deliver merchandise to Joseph Malone & Co., for it provides that they shall be credited with all such advances, and with the price of any goods shipped and invoiced by them to Joseph Malone & Co. It also provides that balances should be struck monthly, and paid by the debtor side. Under this arrangement, when goods were manufactured, though still lying in the factory, and not yet delivered to customers, the plaintiffs were in the habit of crediting Joseph Malone & Co. with them, and advancing to them their value, less the cash discount and the five per cent. commission. They were also in the habit of depositing at the factory quantities of steel bars, which Joseph Malone & Co. drew from and used to make the corset materials, notifying the plaintiffs from time to time of the quantity used, whereupon the plaintiffs would charge them with the same. During these dealings Joseph Malone & Co. purchased some machinery from the plaintiffs, and gave them a chattel mortgage thereon to secure the payment of $4,000, the purchase price. The said chattel mortgage is also in terms for the faithful performance of the aforesaid agreement, which, of course, embraced the payment of all balances found against them as aforesaid. Books of account, embracing the dealings, and showing the credits and debits between the parties, were kept by the plaintiffs. This being the condition of affairs, a fire occurred in the said factory of Joseph Malone & Co., by which the same and the machinery and the goods and materials therein were much damaged. At the time of the fire the plaintiffs' books showed a balance against Joseph Malone & Co. of about $5,500. The fire occurred on April 26, 1890. The plaintiffs claim that of the steel bars which they had deposited with Joseph Malone & Co. at their factory from time to time, as aforesaid, there should have been as much as 92 casks, of the value of about $5,000, at the time of the fire. About $4,000 worth of manufactured stock also lay in the factory at the time. In these circumstances, both parties having suffered by the fire, and the insurance, namely, $14,000, being in the name of Joseph Malone & Co., about $7,000 of which was upon the stock and the rest upon the machinery and fixtures, the said parties entered into the following agreement:

"This agreement, made this 1st day of May, 1890, by and between Elie Weill & Co. and Joseph Malone & Co., witnesseth: The parties hereto agree to pool their joint loss on machinery and stock on the following basis, to wit: First. That the money received shall first be applied to cancel the indebtedness of Joseph Malone & Company to Elie Weill & Company, amounting to about $6,000 in full; and the balance, if any, to be divided pro rata between the parties as follows, and in the following proportion: Seventy-five per cent. to Elie Weill & Company and twenty-five per cent. to Joseph Malone & Company. And it is further agreed that whatever salvage there may be left after the payment of the five per cent. to the adjusters shall be divided equally between Elie Weill & Co. and Joseph Malone & Co. There shall be a release of responsibility to Joseph Malone & Company, and they are hereby released from said responsibility; and, in consideration thereof they shall, and do hereby, assign their policies to Elie Weill & Company. In witness whereof, the parties hereto have hereunto set their hands and seals the year and day first above written.

"Elie Weill & Co.    [Seal.]<br>"Jos. Malone & Co.    [Seal.]

"In presence of Bernard Oberndoerfer."

This agreement was carried out, in that the insurance money was paid and the salvage of stock divided in kind as therein provided; but the machinery was not divided, neither party apparently understanding that it should be, for nothing was said or done in that view. It is conceded that the insurance money was more than sufficient to pay the said book balance of $5,500. Afterwards, namely, in July, the plaintiffs began an action against Joseph Malone & Co. for an alleged conversion of about 52 casks (52,461 pounds) of the said 92 casks of steel deposited from time to time with them at their said factory by the plaintiffs as aforesaid. In the following month they took from said Joseph Malone & Co. the machinery mentioned in their said chattel mortgage thereon, professing to take it by virtue of the said mortgage. In the following March, Joseph Malone & Co. brought an action against them for the alleged conversion of the said machinery. In this latter action the plaintiffs therein (Joseph Malone & Co.) claimed that the agreement above set out, and the carrying out of the same, was a complete adjustment between the parties; and that the taking of the said machinery under the said mortgage was, therefore, without right, and a trespass. The present action was brought to set aside the said agreement for fraud; or, failing in that, to have it so reformed or construed as to exclude the said mortgage from its intendment and operation. And now, at the end of the case, it is insisted, as it is in the complaint, that Joseph Malone & Co., having converted to their own use about 52 casks of the said steel bars deposited in their factory as aforesaid, and the plaintiffs being unaware of such conversion when they entered into the said adjustment agreement, it should therefore be declared void for fraud. It is an answer to say that they have not restored, nor do they offer to restore, the money and the share of the salvage they got under it. Gould v. Bank, 99 N. Y. 333, 2 N. E. 16. But I also find that Joseph Malone & Co. converted none of the steel. They had used at least 20 casks in manufacturing, a large quantity was made worthless by the fire, and at least 40 casks formed part of the salvage, which was examined, sorted, weighed, and divided by the parties without a word of dissatisfaction or accusation. I also find that the $4,000 for the machinery had been paid. But, as the mortgage also subsisted to secure the payment of any balances which Joseph Malone & Co. should owe the plaintiffs from time to time, it matters not whether any part of the said $4,000 remained unpaid, for in that case it formed part of the balance of $5,500; and, that having been paid out of the insurance money, the mortgage had no more life. But, as the plaintiffs insist that there still remains money due from Joseph Malone & Co., it may be well to go further. The first words of the agreement are that the parties "agree to pool their joint losses on machinery and stock." The only interest the plaintiffs had in the machinery was through their said chattel mortgage on part of it. The agreement then proceeds to provide that the insurance money for loss of both machinery and stock "shall first be applied to cancel the indebtedness" of Joseph Malone & Co. It then provides that, if there be any overplus of insurance money, 75 per cent. of it shall go to the plaintiffs, and 25 per cent. to Joseph Malone & Co., and that the salvage shall be divided equally. As each suffered a loss on stock, this seemed to mean salvage on stock, and the parties so interpreted it practically, as has been stated. And, finally, the agreement provides that "there shall be a release of responsibility to Joseph Malone & Co., and they are hereby released from said responsibility." The intention plainly was that the entire responsibility of Joseph Malone & Co. to the plaintiffs should be released; so that, if it can be made out that there was some indebtedness outside of the book account, which remains unpaid (which, however, has not been shown), nevertheless it was all contemplated by the agreement, and is released thereby. The intention was not to give the plaintiffs the advantage which was given to them for nothing. If it was meant that only the book account should be released, or released only to the extent which the insurance money should pay it, I do not see why Joseph Malone & Co. turned their policies over to the plaintiffs, and made with them such an agreement. Let judgment be entered accordingly.

Argued before BROWN, P. J., and DYKMAN and PRATT, JJ.

Chandler & Kremer (Frederic S. Barnum and Eugene G. Kremer, of counsel), for appellants.

Charles J. Patterson, for defendant Halstead.

James C. Church, for defendants Malone and others.

DYKMAN, J.   This is an appeal from a judgment entered upon the decision of a justice of this court after a trial at the special term, and also from an order denying a motion of the plaintiffs' to open the judgment.   The facts are recited in the opinion of the trial judge, and, as we concur in his conclusions, a recitation of the case by us would be unprofitable.

The judgment should be affirmed, with costs, on the opinion of the trial judge, and, as the appeal from the order is destitute of merit, it should be affirmed, with $10 costs and disbursements.   All concur.